MAUD TERRY, RESPONDENT, v. WOODMEN ACCIDENT COMPANY, APPELLANT.—34 S. W. (2d) 163.

Kansas City Court of Appeals. January 5, 1931.

*Leslie P. Robinson* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Ilus M. Lee* for appellant.

BLAND, J.—This is a suit upon a policy of accident insurance in the sum of $1,000, insuring one Homer D. Terry, in favor of his mother, as beneficiary, who is the plaintiff herein. The policy insured Terry against loss of life, etc., or disability "effected through violent, external and accidental means and entirely independent of all other causes, and which shall leave some visible marks upon the body." There was a verdict and judgment in favor of plaintiff in the sum of $1,000, the amount of the policy, together with $100 penalty and $25 attorney's fee for vexatious refusal to pay. Defendant has appealed.

The facts show that insured was injured about 3:30 P. M. of Friday, September 9, 1927, while working as a section hand for the Rock Island Railway Company. He was injured while cranking a railroad motor car that was being used by the section men. The crank became disengaged, whirled in insured's hand and struck him on the left side of the abdomen and over his left eye. After the crank struck him he appeared to be dazed and acted as though his breath had been "knocked out." Immediately after he was injured he was taken to Jamesport, a town six or seven miles west of where he was injured. The next morning it was noticeable that he was suffering from his injuries. On Sunday, September 11th, he went to the home of his mother who lived at that time twelve or thirteen miles east of Jamesport. He rode a hand car from Jamesport to a point within a quarter of a mile of where his mother lived and walked from there home. He arrived at his mother's residence a little before noon and left for Jamesport about 3 o'clock in the afternoon.

While at his mother's he suffered with his abdomen. He returned Sunday evening to the residence of his landlady in Jamesport. At supper time he was suffering and ate but little. The next morning he went back to work for the railway company, although he was sick. He continued at work until September 15th, when the crew of which he was a member was laid off. During this time he exhibited symptoms of growing worse. After being laid off his condition continued to become more aggravated. He was examined by Dr. Thompson, on September 17th, who diagnosed his ailment as appendicitis and advised an immediate operation. On Sunday, September 18th,

he was taken to the home of his grandmother at Jamison, eight or nine miles north and west of Jamesport, where he remained until he was taken, on September 21st, to St. Joseph for an operation for appendicitis. While at the home of his grandmother he suffered severely from his abdomen. Hot packs were applied thereto. Insured continued to pull the hot packs over a blue or discolored place that was observed on the left side of his abdomen. A consultation of doctors was had concerning his condition and it was found that insured had a general condition of peritonitis and his chance of recovery was slight. The doctors concluded, as a last resort, to take him to St. Joseph for an operation. He was taken there on September 20th, was operated on by Dr. Conrad on the 21st and died on the morning of the 25th.

There was a great many witnesses to the accident who testified that they did not see the crank strike deceased in the stomach but saw it strike his head and saw a knot on his head thereafter. Many of them testified that he might have been struck in the abdomen as well as the head, although they did not see the crank strike him in the stomach. One testified to circumstances that would raise an inference that deceased was struck in the stomach, also. No one actually saw him struck in the stomach. There is enough in the record in the way of circumstantial evidence, and inferences to be drawn from the testimony, tending to show that deceased was so struck. However, in the proofs of death furnished defendant no mention of the striking of deceased in the stomach was made. Those proofs contained a document called "Friend's Certificate," stating: "Deceased was injured while cranking motor. Crank flew out and hit him and jerked him." The surgeon's certificate which was signed by Dr. Kenney (who did not testify at the trial) stated that deceased "was hurt by the crank of an engine which he was cranking, said engine backfired and crank was thrown out of the socket and he was jerked and twisted violently and from the time of injury he had tenderness and pain which continually grew worse;" that the doctor first attended deceased on September 17, 1927; that deceased's abdomen was tender and distended and sensitive on both sides; that he then was suffering from peritonitis; that the cause of death was peritonitis "probably from violence." Under the heading "Remarks" appeared the following:

"The violent twist and strain received from the back firing of the engine probably ruptured the bowel and his peritonitis began at once and gradually increased until death."

Claimant's certificate signed by the plaintiff states that deceased: "was cranking motor of section hand car on Rock Island Railroad. The crank flew out and struck deceased in the head, which blow jerked him or twisted him in such a manner as to injure him in the abdomen from which he developed peritonitis and died on September

25, 1927;" that "from the time of the injury he suffered with pain in the abdomen and steadily increased until his death."

At the request of the plaintiff, the court gave, among others, the following instructions:

"2.

"The court instructs the jury that if you find and believe from the evidence that Homer B. Terry died in St. Joseph, Missouri, September 24, 1927, and that such death resulted from bodily injuries sustained through external, violent and accidental means, and that the cause of the death of the said Homer B. Terry was an accidental wound to his abdomen, sustained in cranking a motor car on the 9th day of September, 1927, if you so believe, and that by reason of such blow to the abdomen or wound sustained by reason of such blow, and by reason thereof peritonitis developed which caused the death of Homer B. Terry, if you so believe then your verdict will be for plaintiff.

"3.

"The court instructs the jury that an accident is any event happening without any human agency, or if happening through human agency, an event which under the circumstances is unusual and unexpected to the person to whom it happened. The happening of an event without the occurrence of the will of the person by whose agency it was caused, or the happening of an event without any human agency, and you are so instructed that if such an accident occurred to Homer Brooks Terry on the 9th day of September, 1927, and if you find that such accident was the moving or producing cause of his death, without which his death would not have occurred, and that his death resulted from said accidental cause independent of all other causes, or that his death would not have happened had it not been for such accident, if any, and that the death of deceased was effected through violent, external and accidental means, and that after the accident there were visible marks upon the body of the deceased, then you will return a verdict for plaintiff on the policy sued on, in a sum not to exceed one thousand dollars ($1,000).

"4.

"The court instructs the jury that visible marks upon the body, as used in these instructions, are not to be confined alone to bruises on the surface of the body.

"If the internal injury of deceased, if you believe he was thus injured, produces a pale and sickly look in the face, if it causes vomiting or retching, or if it sends forth the observation of the eye in the struggle of nature, any signs of the injury then those are external and visible signs, provided they are the direct result of the injury."

It is insisted by the defendant that the court erred in giving plaintiff's instructions numbered 3 and 4. Instruction No. 3 does not

fully define the term "accident" as used in the policy. [Cameron v. Mass. Protective Ass'n, 220 Mo. App. 780, 784, 785; Caldwell v. Ins. Co., 305 Mo. 619; Curry v. Ins. Co., 221 Mo. App. 626.] There is no question but that Instructions 3 and 4 are erroneous. While there was some evidence tending to show that a sudden and unexpected "dodge," "oscillation," "push" or "twist" of the body, when the intestinal tract is full, can cause a rupture of a small intestine which might result in peritonitis, that the blow deceased received to the head, alone, could not produce such effect. However, Instructions 3 and 4 are broad enough to permit the jury to rove at will and find any of the happenings testified to as having occurred to deceased when the crank flew out, as an accident, and base recovery upon that, as Instruction No. 3 directs a verdict.

The instructions are erroneous for another reason. If deceased's condition of peritonitis, from which he died, was the result of the accident it was caused, according to plaintiff's evidence, by the crank striking him in the abdomen, thus, the real cause was explained in plaintiff's testimony. There is no evidence that deceased's intestinal tract was full at the time of the accident, nor is there any direct testimony that there was any sudden or unexpected push or twist of his body and, of course, none that he received a rupture to his intestines at that time. The cause of peritonitis having been fully explained, as before stated, plaintiff's testimony, under the circumstances, as to whether the peritonitis was caused by a rupture of the intestines as a result of some violent twist, or the like, to the body at the time of the accident is left to speculation. This seems to have been recognized by plaintiff in the offering of her Instruction No. 2. Yet instructions numbered 3 and 4 are broad enough to permit recovery on the theory that deceased received a rupture to his intestines by some twist of the body or the like at the time of the accident.

Complaint is made of the giving of plaintiff's Instruction No. 2, on the ground that it is claimed it is assumed therein that deceased received an "accidental wound to his abdomen and that he received a blow to the abdomen." There is no assumption in the instructions that he received an "accidental wound to his abdomen." [Weist v. Ins. Co., 186 Mo. App. 22, 45; Costello v. Kansas City, 219 S. W. 386, 391.] There is an assumption that he received a blow to his abdomen, provided the words "blow" and "wound" are not used synonymously in the instruction. The clause in the instruction "or wound sustained by reason of such blow" seems to treat the two as not synonymous. However, it is quite apparent that the instruction is very awkwardly drawn and, at another trial, it should be redrafted so as to avoid any possibility of claim of error.

Complaint is made of the admission of certain evidence. However, we find from an examination of the record that some of the testi-

mony, which is now claimed to have been erroneous, was not objected to until after the questions were answered. In other instances the objection at the trial was different from that now urged. In others the character of the evidence now complained of was first elicited by the defendant. [See Neely v. Chi. Gr. Western. R. Co., 14 S. W. (2d) 972, 977.]

It is insisted that the court erred in giving plaintiff's instruction submitting to the jury the question of vexatious refusal to pay. It is claimed that there is no evidence of ·vexatious refusal to pay in this case. This contention must be sustained. The proofs of death do not intimate that the peritonitis from which deceased died was caused by a blow to the abdomen. However, at the trial this explanation was advanced by plaintiff as the cause of the death. The proofs of death convey the thought that deceased was struck in the head; that as a result of this striking he was jerked and twisted in such a manner as to result in a ruptured intestine. While there was evidence tending to show that an unexpected and sudden twist or the like to the body, when the intestinal tract is full, can cause a rupture of an intestine, as before stated, whether that happened in this case, under all of the testimony, is left to mere speculation and guess. There is authority holding that where the theory advanced at the trial is different from that advanced in the proofs of death the company is usually entitled to defend the suit without being adjudged guilty of vexatious refusal to pay. [Merkel v. Ry. Mail Ass'n, 205 Mo. App. 484, 494; McAllister v. Nat'l Life Ins. Co., 261 S. W. 733.]

However, the record in this case discloses that defendant did not rely wholly upon the proofs of death. Plaintiff's attorney testified that shortly after this suit was instituted two claim agents of defendant called upon him; that one of them was the "spokesman" and that this one said that the only investigation made by defendant was by correspondence; that this agent said that he had written to a doctor at a university in Iowa City who had advised him "that there wasn't any such a thing as traumatic appendicitis, and for that reason they refused to pay the claim." There was some correspondence between the parties, of a nature not material to the point now under discussion, before defendant rejected the claim. The letter rejecting the claim, dated December 7, 1927, stated:

"From the facts now at hand, it appears conclusive that Mr. Terry's death resulted from an attack of appendicitis and peritonitis which developed. This being in the nature of a disease, it does not appear that there is a proper claim under the accident insurance policy which he held in our company. The same provides indemnity only for death or disability resulting directly and exclusively from accidental injury. In this situation our claims committee is obliged to reject the claim."

There is no statement in the proofs of death that deceased died from appendicitis but the proofs give the names of the doctors who were "called in this case" and Dr. Conrad, the surgeon who operated upon deceased, was mentioned in this connection. Dr. Conrad, testifying for the defendant, stated that the operation was for appendicitis; that the appendix was ruptured when removed and in his opinion it was ruptured before deceased was taken to St. Joseph; that deceased died from peritonitis caused by a ruptured appendix.

Plaintiff's witness, Dr. Graham, who was present at the operation, denied that the appendix was ruptured. However that may be, defendant made some investigation by correspondence of the medical phase of the case aside from the proofs of death and obtained information from Dr. Conrad or otherwise that the death was caused by appendicitis. There evidently was no investigation of the facts surrounding the accident but apparently defendant relied on the proofs of death as to that. Defendant could have communicated with Dr. Graham, but what he would have told it other than was reported in the proofs of death is not disclosed by the testimony. The testimony does conclusively show that the theory advanced by plaintiff at the trial could not have been evolved until after the correspondence ceased and liability was denied, as plaintiff's attorney, who had charge of the case from the time the proofs of death were prepared, did not learn that deceased was struck in the abdomen until the latter part of December, 1927 and this suit was filed shortly thereafter or on January 16, 1928. Although defendant had rejected the claim before the discovery of the new facts was made it was not informed of the discovery before the suit was filed but was left to believe the facts as they were stated in the proofs of death.

There is a great deal of testimony in the record tending to show that the condition of peritonitis in deceased was caused by a ruptured appendix and not by anything that happened to deceased at the time of the accident. As before stated, the surgeon who performed the operation upon deceased stated that a ruptured appendix was the cause of the peritonitis. Of course, this was denied by plaintiff's physicians. As before stated, Dr. Graham testified that the appendix was not ruptured. All of the testimony shows that deceased was not suffering from traumatic appendicitis but the misleading proofs of death well may have confused defendant as to this. Dr. Graham testified that deceased's condition of peritonitis, in his opinion, could have brought about the inflamed appendix and that the peritonitis was not caused from the appendicitis. However, he did testify that it was not an ordinary thing for a man receiving a blow on the abdomen, sufficient to cause peritonitis, to be able to work thereafter as long as deceased did in this instance, but that such a thing could happen. He further testified that it was a very rare thing that an intestinal rupture resulting in peritonitis is brought

about by a blow. It is admitted that deceased had appendicitis. However, plaintiff's witness, Dr. Moore, testified that peritonitis does not cause appendicitis; that a blow to the left side will not cause appendicitis; that the appendix is on the right side. The other medical witnesses agreed that appendicitis could not be directly caused by a blow on the left side of the abdomen.

Defendant's medical witnesses testified that deceased could not have continued to work had he suffered a ruptured appendix at the time of the accident; that deceased would have developed peritonitis within twelve hours of the rupture; that after a man develops general peritonitis "he is just as sick a man as you ever looked at" and generally dies; that the death results in three days at the most after the general peritonitis sets in.

It is claimed that defendant should have made further investigation before denying the claim; that all it did was to consult the doctor in Iowa City. In the first place defendant was misled in the proofs of death made in the case. Those proofs contained the statement of Dr. Kenney and it would appear to a reasonable man that no further communication with this doctor was necessary. There is nothing to show that had defendant communicated with Dr. Graham or other doctors that it would have found out anything save that contained in the proofs of death, as plaintiff's theory as to the blow on the abdomen of deceased producing peritonitis was not evolved until after the claim was denied. In some manner defendant discovered that deceased was operated upon for appendicitis and that the peritonitis causing his death was a result of that disease. Under the medical testimony in this case it was only reasonable for defendant to have supposed at the time of its denial of liability that deceased died as a result of appendicitis and that this disease was the cause of the death.

Under the circumstances, we think that defendant was within its rights in defending this case on the theory that deceased died of peritonitis brought on as a result of a ruptured appendix, in view of the testimony which we have detailed showing what information it had when it denied liability. There was no substantial evidence of vexatious refusal to pay and, therefore, nothing to submit to the jury on this question. [Patterson v. Ins. Co., 174 Mo. App. 37; Weston v. Am. Ins. Co., 191 Mo. App. 282; Berryman v. Southern Ins. Co., 285 Mo. 379, 397; Aufrichtig v. Columbia National Life Ins. Co., 298 Mo. 1, 16; State ex rel. v. Allen, 303 Mo. 608, 619, 620, 621.] It follows that at another trial the question of vexatious refusal to pay should not be submitted to the jury.

The judgment is reversed and the cause remanded. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.