HOFF *v.* MUTUAL LIFE INSURANCE COMPANY OF
NEW YORK.

1. INSURANCE—ACCIDENT—NEGLIGENCE OF THIRD PERSON—INFECTION.
  Evidence *held*, to show that hospital patient, a paralytic with
  spinal tumor, who was left on bedpan several hours through
  inadvertent neglect of attendant, causing abrasion by means
  of which fatal infection entered and proximately caused death,
  died of injury effected through ''accidental means'' as used
  in double indemnity clause of life insurance policy.

2. SAME—PROXIMATE CAUSE—ACCIDENT INSURANCE.
  Showing that insured's death was proximately caused by acci-
  dental injury is sufficient, in this State, to entitle beneficiary
  to recover under double indemnity clause of life insurance
  policy.

3. NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY—APPEAL
  AND ERROR.
  Question of which of several causes was proximate cause of death
  is for jury where each is supported by competent evidence and
  jury's findings thereon should not be disturbed where made
  after proper charge.

Appeal from Livingston; Collins (Joseph H.), J.
Submitted January 3, 1934. (Docket No. 31, Cal-
endar No. 37,482.) Decided April 3, 1934.

Assumpsit by Lila D. Hoff against Mutual Life
Insurance Company of New York, a foreign corpo-
ration, to recover sums due under double indemnity
provision in life insurance policy for death due to
accidental means. Verdict and judgment for plain-
tiff. Defendant appeals. Affirmed.

*Burke & Burke* and *Edward F. Conlin* (*Richard
P. Whitker*, of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone*, for defendant.

BUSHNELL, J. Plaintiff is the beneficiary named in a life insurance policy issued by the defendant on March 2, 1923, to Charles J. Hoff, deceased. The policy contained a provision for double indemnity upon proof that the death of the insured resulted "directly from bodily injury, * * * independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent and accidental means, and that such death occurred within 60 days after the date of such bodily injury."

Hoff was taken to the McPherson Hospital in Howell about May 27, 1932, suffering from general pains in the arms and legs. A paralysis of his lower limbs developed shortly thereafter. The attending physician, Dr. Culver, diagnosed the cause as "some pressure upon the spinal cord." Some mornings later he discovered a severe abrasion on the base of the spine. An infection developed, resulting in toxemia. Two days later Hoff was removed to St. Joseph Mercy Hospital in Ann Arbor, where he died on July 22, 1932.

It is claimed by plaintiff and sustained by the proofs that, on or about June 20, 1932, Hoff was placed on a bedpan about 10 o'clock in the morning, and was not removed until 2:30 that afternoon. Because of his paralyzed condition, he did not experience pain as a result of the prolonged pressure and abrasion.

The superintendent of nurses of McPherson Hospital testified that she discovered a redness at the base of deceased's spine about two days before he was removed to the Ann Arbor hospital. Plaintiff testified that, when the patient was lifted from the bedpan, a nurse applied a pad with medicated salve and that the next day the abrasion at the base of the spine was bleeding.

Dr. Marshall made an examination two days later on deceased's admission to the Ann Arbor hospital, and found "an abrasion near the base of the spine, an area in which the skin was gone, about two or three inches in diameter—a bleeding surface," and his conclusion was that death was caused by the infection. He signed the death certificate which reads:

"The principal cause of death and related causes of importance were as follows:

"Toxemia incident to an infected pressure sore.

"Other contributory causes of importance: spinal tumor. Acute paralysis."

Dr. Howard, a pathologist, performed an autopsy and found a spinal tumor two inches in length and about a quarter of an inch thick, lying within the bone just outside the membrane of the spinal cord. He also discovered a septic condition of the blood.

The following is part of the testimony of the pathologist:

"Cross-examination.

"Q. From your autopsy, doctor, what would you say was the cause of the death of Mr. Hoff?

"A. Infection.

"Q. And what other causes?

"A. Well, you might say that the spinal cord tumor was a contributing cause, if you wish to say that; it was the thing that induced this man to become injured or the infection to develop.

"Q. In other words, it had already caused paralysis when he sat on the bedpan, is what you mean to say?

"A. Yes.

"Q. I think that is all.

"Re-direct examination.

"Q. But, doctor, the sole and only cause of this man's death, in your opinion, was the infection?

"A. That's right.

"*Q.* In other words, if he hadn't gone to the hospital, he might not have had an accident or the sore from the bedpan and the infection would never have set in?

"*A.* That is true.

"*Q.* And that is the only way that you connect the tumor with his death? ·

"*A.* That's right."

While it has no bearing on the decision in this case, it is interesting to note that plaintiff called five doctors as witnesses in her behalf and defendant did not call any, being content to rely on cross-examination.

The defendant had already paid the face of the policy before the time of trial and the jury found for plaintiff in the sum of $1,037.50, the added sum called for under the double indemnity provision, with stipulated interest.

The appeal presents two questions: (1) Did the insured suffer an injury effected through "accidental means?" (2) Is it necessary that the injury be the sole cause of death or is it sufficient that it be the proximate cause?

We believe that the testimony shows that death resulted from an injury produced by "accidental means," as defined by our decisions. We have just recently held:

"Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged. with a design of producing—it is produced by. accidental means." *Wheeler* v. *Title Guaranty & Casualty Co.,* 265 Mich. 296.

See, also, *United States Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100 (9 Sup. Ct. 755).

Ordinarily, the use of a bedpan will not result in injury. Death resulting from prolonged use of such an instrumentality, through negligence of an attendant in failing to remove it, followed by the entry of an infection into the abrasion, may be regarded as caused by "accidental means." We find no provision in the policy which excepts accidental injuries arising out of the negligence of third parties. The insured can hardly be held to have foreseen the possible consequences of his prolonged presence on the bedpan, inasmuch as his paralyzed condition made it impossible for him to experience discomfort or pain.

Death resulting from the use of infected dental instruments was held accidental in *Horton* v. *Travelers' Ins. Co.,* 45 Cal. App. 462 (187 Pac. 1070). A similar conclusion was reached in a case in which an infection followed the administration of a hypodermic by the insured, *Townsend* v. *Commercial Travelers' Mutual Accident Ass'n,* 231 N. Y. 148 (131 N. E. 871, 17 A. L. R. 1001), and in which an infection resulted from the insured's attempt to puncture a pimple. *Interstate Business Men's Accident Ass'n* v. *Lewis,* 168 C. C. A. 325 (257 Fed. 241); *Cameron* v. *Massachusetts Protective Ass'n,* 220 Mo. App. 780 (275 S. W. 988).

In the case at bar, the abrasion and infection were not the natural and probable consequences of the use of a bedpan and could not be reasonably anticipated, nor was the infection a result which the insured or the hospital attendants intended to obtain, but rather the consequences of inadvertent neglect. It may be properly regarded as an injury effected through "accidental means."

The appellant's theory is that the tumor and the paralysis had an important part in bringing about the death of the insured, and that the injury was not the sole cause of death as required by the policy. The appellee contends that the abrasion and subsequent infection were the proximate causes and her contention is borne out by the testimony. To enable the beneficiary to recover in this State, it is sufficient that the accidental injury be the proximate cause of death.

"Each of these conflicting claims was supported by some competent evidence. It was therefore a question for the jury to determine the cause of death, and if both causes concurred, to say which was the efficient dominant, proximate cause. Even though the contract of insurance should have been interpreted as the defendant claims, the evidence presented a case for the jury." *Kangas* v. *New York Life Ins. Co.,* 223 Mich. 238.

We have examined the authorities submitted by both sides on this issue and do not feel that a new question is presented justifying an exhaustive analysis and compilation of authorities. The profession is well acquainted with previous compilations of authorities by this court. We merely refer to *Abbott* v. *Travelers Ins. Co.,* 208 Mich. 654; *Kangas* v. *New York Life Ins. Co., supra; Ashley* v. *Agricultural Life Ins. Co. of America,* 241 Mich. 441 (58 A. L. R. 1208) ; and the footnotes to these cases.

We agree that the findings of the jury in this case, made after a charge to which no exceptions were taken and probably could not be taken, should not be disturbed, especially since the case falls within

the definition given by Justice NELSON SHARPE in *Wheeler* v. *Title Guaranty & Casualty Co., supra.* The judgment is affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.