## CENTURY INDEMNITY CO. v. CARROLL.

### No. 11068.

Court of Civil Appeals of Texas. Dallas.
Nov. 5, 1932.

Rehearing Denied Dec. 17, 1932.

Robertson, Robertson & Payne, of Dallas, for appellant.

Sullivan & Wilson and J. Lee Zumwalt, all of Dallas, for appellee.

LOONEY, J.

C. S. Carroll, appellee, sued Century Indemnity Company, appellant, to recover the death benefit and amount provided for surgical treatment, under an accident policy issued by appellant to Mrs. Connie Carroll, appellee's wife.

The provisions of the policy relied upon for recovery by appellee and defensively by appellant are these: The policy insured Mrs. Carroll against bodily injury or death from accidental cause, or from medical or surgical treatment (resulting in death), made necessary by reason of injuries covered by said policy; the contention of appellee being that the death of Mrs. Carroll was accidental within the terms of the policy. Appellant denies this, contending that death resulted either directly or indirectly from medical or surgical treatment not rendered necessary solely by injuries covered by the policy, and in this connection specially pleaded a proviso of the policy, reading: "This insurance shall not cover accident, injury, death or other loss caused directly or indirectly by medical or surgical treatment, except such as may result directly from surgical operations made necessary solely by injuries covered by this policy, and performed within ninety days after date of accident." At the conclusion of the evidence, each party made request for an instructed verdict, that of appellant was denied, the request of appellee being granted, verdict and judgment followed accordingly.

The facts are undisputed and show that appellee was entitled to the judgment rendered, if in view of the proviso of the contract quoted above he was entitled to recover at all, under the following undisputed facts: Dr. E. M. Schultz, dentist, testified in substance that, on January 6, 1930, he extracted a tooth for Mrs. Carroll; that the tooth was not infected, she was not suffering pain, but its extraction was necessary because it was crowded and had not entirely erupted, had an overhanging gum flap, affording a situs for infection, etc.; that after the extraction the usual antiseptic treatment was given and the patient discharged; that about two days later (January 8th) Mrs. Carroll complained of pain, and on examination witness found slight swelling surrounding the wound; thereupon administered the usual antiseptic treatment, saw her the next day (January 9th), the swelling and pain had increased, and same treatment as before was administered. The patient suffered continuously that day; Dr. A. Wilkinson, a practicing physician, being called in, they concluded that the patient was suffering from acute cellulitis; saw the patient again January 11th; her condition was much worse; Dr. H. K. Crutcher, also a practicing physician, was called in; the patient's condition at the time was so critical that she was carried to the Methodist Hospital. The witness said: "I did not foresee or expect the condition to develop that afterwards developed to Mrs. Carroll when I extracted this tooth on the 6th day of January."

Dr. Wilkinson, one of the attending physicians testified that, when he first saw Mrs. Carroll (January 10th), she was suffering from cellulitis in throat and neck, neck badly swollen, temperature 102, saw her next day (January 11th), condition much worse, sent her to the hospital; next day Dr. Sistrunk performed a tracheotomy, rendered necessary by the condition of the patient. The witness also said: "I diagnosed her condition * * * to be cellulitis. * * * My opinion * * * was that it was an infection following the extraction of a tooth—I do not say the extraction of the tooth caused it, but the infection following the extraction of the tooth. * * *"

Dr. Crutcher, one of the attending physicians, testified that on January 11, 1930, he

was called in consultation with Drs. Wilkinson and Schultz, found Mrs. Carroll suffering from acute infection (cellulitis), a very dangerous infection of the cellular tissues, she had fever, rapid pulse, was restless and swollen extensively, her condition became progressively worse, was removed to the hospital and given supportive measures, sedatives and local applications; on January 12th a tracheotomy was performed, to relieve respiratory failure, serum was given to combat infection, but the patient died. The witness said: "As I understand, the tooth was not infected but was an imbedded wisdom tooth. The patient did not have need for it and there was no room for it, and through some way we figured that this bacteria gained entrance into that clot, and the patient seemed to have lowered resistance and the infection followed. The death of the woman was caused by infection. I consider her death directly due to infection, which was brought about by the extraction of the tooth. At the time this tooth was extracted it absolutely could not have been foreseen that this condition that afterwards developed could have developed at that time, and all these things were unforeseen at the time. * * *" It was shown that serum was given in an effort to combat the infection, and as to this the witness said: "The giving of the serum did not cause the death. The operation that W. E. Sistrunk performed (tracheotomy) was a proper operation. The throat and neck were badly swollen on account of the cellulitis, so that she could not breathe and the operation was performed on her. * * * The tracheotomy did not cause her death. * * *"

██ In view of these undisputed facts, we readily agree with appellant that neither the surgical operation (extraction of the tooth) nor the treatment that followed resulted from, nor were they rendered necessary solely by, injuries covered by the policy, but it is also just as obvious that the death of Mrs. Carroll resulted neither directly nor indirectly from the surgical operation (extraction of the tooth), but did in fact result from, and was directly caused by, infection that entered the tooth socket following its extraction. The evidence is conclusive that such was a rare, unrelated, and unlooked for result, in other words, that the death was accidental, and therefore covered by the policy.

Under facts and circumstances substantially identical with the facts involved here, we held, in the case of Francis v. International Travelers' Ass'n, 260 S. W. 938, 940 [on writ of error the Supreme Court affirmed the decision, see 119 Tex. 1, 23 S.W.(2d) 282], that death occurring under such circumstances must be regarded as accidental, so, without further discussion, we hold that the case at bar is ruled by the doctrine announced by both this court and the Supreme Court in the Francis Case, supra.

However, appellant contends that language employed by the Supreme Court in the Francis Case supports its position, the insistence being that the exemption pleaded in the Francis Case, is in effect the same as the defense pleaded here, but, as the exemptive provision appeared only in the by-laws of the association (and not in the policy as required by statute), the same could not be given effect, or regarded as a part of the policy, but said the Supreme Court: "The by-laws of the association, however, at the time the policy was issued, and at all times subsequent thereto, contained exceptions and provisions which, if given effect, would prevent recovery." Appellant seizes upon this language as decisive in its favor, on the theory that the exception pleaded here, being a part of the policy, and in substance the same as the exception pleaded in the Francis Case, was characterized by the Supreme Court as a complete defense, "if given effect."

The cases are radically different, in this respect; the exemption pleaded in the Francis Case was not, in effect, the same as the exemption pleaded in the case at bar. The contract proviso pleaded by appellant contains no exemption from liability for death resulting from either local or general infection, whereas, in the Francis Case, the by-law provision, to which the Supreme Court addressed the remarks above quoted, exempted the association from liability for a death resulting from "local or general infections unless the infection is introduced into, by or through an open wound which * * * must have been caused by external, violent, and accidental means, and be visible to the unaided eye." The exemption relied upon in the instant case, and the one involved in the Francis Case, are so dissimilar that it cannot be reasonably said they are to the same effect; therefore the language quoted from the Supreme Court opinion is not in point.

We overrule all assignments and propositions urged for reversal, and affirm the judgment of the trial court.

Affirmed.

### On Motion for Rehearing.

We are satisfied as to the correctness of our decision, based, as it necessarily was, upon the case as pleaded and tried and as presented on appeal; however, after contending at length that the court erred in affirming the judgment, for reasons stated in the opinion, appellant introduces, by its motion for rehearing, an entirely new issue, saying: "But should the court see fit to hold to its finding that the death resulted from an infection, we wish to direct the court's attention to the fact that such infection is within the policy exemption, and appellant is not entitled to recover herein under any theory." Again appellant says infection cannot form the basis of a recovery under the policy, as

suggested by the court, because it is expressly exempt under the terms of the policy sued upon.

■ This defense was neither urged in the court below nor on appeal, until presented in the motion for rehearing, as above stated. The belated defense cannot be considered, as a litigant is forbidden to assume an attitude on appeal not taken at the trial. See Boatner v. Providence, etc., Co. (Tex. Com. App.) 241 S. W. 136, 140, and authorities cited.

Appellant's motion for rehearing is in all things overruled.