## INTERNATIONAL TRAVELERS ASS'N et al. v. MARSHALL.

No. 11909.

Court of Civil Appeals of Texas. Dallas.

April 25, 1936.

Rehearing Denied May 23, 1936.

Head, Dillard, Maxey-Freeman & Mc-Reynolds, of Sherman, and Seay, Malone & Lipscomb and Curtis White, all of Dallas, for appellants.

Hamp P. Abney, of Sherman, for appellee.

LOONEY, Justice.

Appellee, Mrs. Grace Marshall, as beneficiary, brought this suit on an accident policy issued to her husband, William Wright Marshall, by the International Travelers Association, later reinsured by the International Travelers Assurance Company, appellants herein. The policy provides that, in the event insured should suffer the loss of life as a result of bodily injuries effected directly, independently and exclusively of all other causes through accidental means, the insurer would pay the beneficiary $5,000. Appellee alleged that on June 22, 1933, while the insured was engaged in moving a threshing machine out of a warehouse used in connection with his mercantile and hardware business, it became necessary for him to use a crowbar five or six feet in length with which to guide the wheels of the thresher so as to avoid contact with other implements in passing through the door of the building, and that, while insured and a helper or helpers were pushing and pulling on the crowbar, the same slipped struck insured in the abdominal region, or caused him to fall or to be thrown violently against the threshing machine and a wheel thereof, inflicting various internal injuries, especially to his peritoneum and other vital organs in the abdominal region, causing him to become immediately sick, and resulted directly, independently and exclusively of all other causes, in producing peritonitis, from which he died June 27, 1933 (there is also an alternative plea

that the injuries produced other results, but, not being supported by evidence, will not be further noticed). Appellee alleged that she furnished proofs of loss, as required by the terms of the policy; and in the alternative alleged that appellants waived strict compliance therewith, and were estopped to insist upon the absence of same as a defense to the suit.

Appellants answered by exceptions, general and special, general denials, and under oath denied that proper proofs of loss were furnished, or that the furnishing of same was waived, or that they were estopped to urge such failure as a defense; and further alleged that the death of insured was not caused by accidental means within the terms of the policy, but by diseases known as gastroenterocolitis and nephritis; also alleged that, under certain specific provisions of the policy, appellants were only liable, if at all, for a portion of the amount claimed, in that, when injured, insured was engaged in an occupation, or in the performance of an act pertaining to an occupation, classified as more hazardous than the occupation being followed at the time the policy was issued. The case was submitted to a jury, and resulted in a verdict in favor of appellee, upon which the court rendered judgment in her favor against appellants for $5,000, with interest thereon at the rate of 6 per cent. per annum, and all costs, from which this appeal was taken.

In answer to proper issues submitted, the jury found that on June 22, 1933, insured sustained injuries by reason of an accident while at work in his store or warehouse, that directly, independently and exclusively of all other causes, resulted in his death; and, in answer to issues given at the request of appellants, they found that the death of insured was not partly caused or contributed to by an inflammatory infection or disease of the kidneys known as nephritis; nor was his death either caused, partly caused, or contributed to by an inflammatory infection or disease of the stomach and intestinal tract, known as gastroenterocolitis. These findings, in our opinion, are sustained by evidence; hence are adopted as our conclusions of fact on the respective issues.

Appellants have lengthily and exhaustively briefed the case, presenting 96 assignments of error and 71 propositions, of which 20 are bottomed on the central thought that, as appellee's alleged cause of action was supported simply by a scin-

tilla of evidence, the court erred in not directing a verdict for appellants; erred in not granting their motion for judgment non obstante veredicto; and erred in not granting the motion for a new trial.

The question presented by these propositions is essentially one of fact; that is, whether the evidence justified its submission and the findings of the jury. We recognize the doctrine asserted by appellants, that a mere scintilla of evidence is not sufficient, and that in such a case it is the duty of the trial court to direct a verdict, although there may be slight, but weak and inclusive, evidence raising simply a surmise or suspicion of the existence of the facts sought to be established. In determining this matter we will only consider the evidence most favorable to the contention of appellee. Mr. Garvin, a farmer residing eight miles out of Whitesboro, was present on the occasion, assisted Mr. Marshall in the use of the crowbar to prevent the wheels of the thresher from contacting the wheels of a tractor as it passed through the door of the warehouse. Garvin testified that the crowbar slipped and that Mr. Marshall fell with his belly against the wheel, and at that time said he had hurt himself; and later in the evening, being at the farm of witness to deliver some parts, Marshall said he was going home and go to bed, that he was feeling so bad he could not sit up. Other witnesses testified to the use of a crowbar by the insured on the occasion in question for the purpose mentioned, but Garvin is the only witness who testified that Marshall fell or complained of being hurt. Miss Ruth Marshall, daughter of insured, testified that her father came home about 6 or 7 o'clock in the evening (Thursday, the day of the alleged accident), complaining of pain in his abdominal region; that he suffered pain all Thursday night, went to the store Friday morning, but came home about 11 o'clock, complaining of pain, suffered Friday night, Dr. Price was called to see him about 6 o'clock Saturday morning; that her father was taken to a hospital in Sherman Sunday morning; and that he complained of pain during all the time until becoming unconscious on Monday afternoon. Mrs. Marshall testified to facts substantially as detailed by Miss Ruth, and said further that prior to the date of the alleged accidental injury Mr. Marshall had been perfectly well. Dr. C. D. Price, resident physician in Whitesboro, testified that he saw Mr. Marshall about 6 o'clock Saturday morning (June 24th), found him complaining of pain in the pelvic region and back; that the pain was in the abdominal region, below the umbilicus; that witness made no positive diagnosis except that pelvic inflammation existed; saw insured the last time about 6 o'clock p. m. same day; at that time, due to the swollen condition of his abdomen, witness thought it was peritonitis, and, being himself sick, advised the family to have insured taken to a hospital in Sherman; that peritonitis could result from a blow; and that in his opinion insured died of peritonitis. Mr. Summy, the undertaker who handled the body of Mr. Marshall, testified that there was a distended condition of the lower extremity of the body, the pelvic cavity. Dr. Crabb, answering hypothetical questions, expressed the opinion that a peritonitis would probably result from a fall, the front part of the body striking against the wheel, in the manner described in the hypothesis. Although Dr. Stout, one of the physicians who treated Mr. Marshall at the hospital, expressed the opinion that his death did not result from peritonitis, but from other causes, said, assuming that a person fell against a wheel, in determining whether peritonitis existed, the fact of the fall and the injury therefrom, should be considered, saying in this connection that "irritation of the colon could be brought about by traumatism, and if a man falls on a hard substance from a standing position in such a way as to bruise the colon or intestines, it would produce that effect." The foregoing comprises the evidence most favorable to appellee, and, in our opinion, the same fully authorized the submission of the issues and supports the findings of the jury. We therefore overrule all assignments and propositions relating to this question.

Thirteen of the propositions urged by appellants are reducible to the contention that the court erred in submitting issues 1, 2, and 3, inquiring whether or not Mr. Marshall sustained bodily injuries by reason of an accident, instead of through accidental means. The insuring clause of the policy insured against loss resulting from bodily injuries effected directly, independently and exclusively of all other causes, through accidental means. The bodily injuries alleged to have been sustained by insured were of the nature described in the policy, and the evidence, in

our opinion, sustained these allegations. In view of this situation, we do not think anything material would have been added to the meaning of the issue submitted, or to the understanding of the jury, composed of average men, if the court had employed the phrase "accidental means" rather than the word "accident." The issue was properly pleaded and proven, and we think was sufficiently and understandingly submitted to the jury; hence overrule all assignments and propositions pertaining to this matter.

Propositions 19, 23, and 26, based on objections to issues Nos. 1, 2 and 3, as being upon the weight of evidence, are overruled.

As before shown, the policy provided insurance "against loss resulting from bodily injuries effected directly, independently and exclusively of all other causes through accidental means." Section 2 of article 11 of the policy provides that: "The accident insurance under this policy does not cover any injury, fatal or otherwise, sustained by the insured prior to 12 o'clock noon, Standard Time, on the date hereof; or any injury received directly or indirectly as a result of, or that is contributed to, by insured violating any law; being in any degree under the influence of a narcotic or intoxicating liquor; or while insane; or by the act of any person (sane or insane) done to injure the insured, except for the sole purpose of burglary or robbery; or while enlisted or while acting as a sailor or soldier or aeronaut engaged in naval or military service; or while riding or as a result of riding in a hydroplane, aeroplane or balloon; or from disease or medical or surgical treatment therefor; or ptomaine poison; or riding or driving in any automobile race. Said benefits do not cover the disappearance of insured." Appellants contend that the burden was upon appellee to both allege and prove that the loss complained of did not come within either of these exceptions. The conclusion from appellee's allegations, we think, is inescapable that the loss was not the result of either of the excepted causes. Bearing upon this matter, appellee alleged: "And said injuries resulted directly, independently, and exclusively of all other causes in producing peritonitis, and as the direct and proximate result of said injuries so accidentally received and exclusively of all other causes, he continued sick and unable to work until June 27, 1933, when he died as a result of peritonitis so caused by said injuries received by him suffered through accidental means as herein alleged." This plea is a negation of any suggestion that the injuries sustained by Mr. Marshall were effected other than as alleged in the petition, and forbids the idea that the loss complained of came within either of the exceptions named in the policy. The petition was good against the general demurrer urged by appellants, and, besides, we think the allegations and proof by both parties are sufficient answers to a suggestion that the loss could have been sustained under either exception named in the policy, or in any manner other than as alleged by one or the other of the parties. But, aside from this, we are of opinion that the doctrine long ago announced by the Supreme Court, in East Texas Fire Ins. Co. v. Dyches, 56 Tex. 565, 569, should rule the questions presented. The court said: "Those * * * conditions of the contract * * * in the nature of exceptions * * * are matters of defense, and were not required to be noticed or negatived in the petition." In the later case of Burlington Ins. Co. v. Rivers, 9 Tex.Civ.App. 177, 28 S.W. 453, the Austin court, in an opinion by Judge Key, announced the same doctrine. So we hold appellee's allegations heretofore quoted a sufficient showing that the loss did not come within either exception named, and that the proof fully sustained the allegations. Appellee's petition being good against the general demurrer, the exceptions were not required to be negatived in the absence of a special exception by appellants calling attention to the matter. We overrule all assignments and propositions relating to this question.

Under propositions 51 and 58, appellants contend that the court erred in rendering judgment against them for $5,000, in that deceased when injured (if injured as claimed) was engaged in a more hazardous occupation, or in an act pertaining to an occupation more hazardous than the classification under which the policy was written. The provision of the policy invoked is section 1 of article 10, as follows: "Section 1. This policy includes the endorsements and attached papers, if any, and together with the application for same (copy of which application is attached) contains the entire contract of insurance except as it may be modified by the

Association's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the Association as more hazardous than that stated by the policy, or while doing any act or thing pertaining to any occupation so classified (except ordinary duties about his residence or while engaged in recreation), in which event the Association will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate, but within the limit so fixed by the Association for such more hazardous occupation."

We do not think appellant's classification of risks, by virtue of which they seek to interpolate certain provisions reducing the policy from a $5,000 to a $2,000 indemnity, can be considered as a part of the policy contract. This manual of risks and premium rates is a document entirely aside from the policy; its contents being undisclosed. A matter of such materiality, determinative of the amount to be paid on the contingency insured against, under a plain provision of the statute, should have been specified in the policy. On a similar question presented to this court in Francis v. International Travelers' Ass'n (Tex.Civ.App.) 260 S.W. 938, and in same case presented to the Supreme Court, International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.(2d) 282, it was held that, under article 4797, R.S.1925, requiring the policy to specify the sum of money promised to be paid upon the contingency insured against, the contingency, including all exceptions, must be specified in the policy, and that general language of the policy naming the contingency cannot be limited by matters dehors the policy. This doctrine is decisive of the question here presented; hence all assignments and propositions pertaining thereto are overruled.

Sixteen propositions, 34 to 37, inclusive, and 55 and 56, are grouped around the contention that appellee failed to comply with the terms of the policy in regard to furnishing proofs of loss (death). The policy provides that written notice of injuries shall be given within 20 days after the date of the accident causing the injury, and sections 6 and 7 of article 10 of the policy read: "6. The association, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made. 7. Affirmative proof of loss must be furnished to the Association at its office, in case of claim for loss of time for disability, within ninety-one days after the termination of the period for which the Association is liable, and in case of claim for any other loss, within ninety-one days after the date of such loss." Appellants having received prior notice of the death of Mr. Marshall, occurring June 27, 1933, Mr. Abney, attorney for appellee, wrote appellant July 7, 1933, giving notice that the death of insured was the result of an injury accidentally received within the terms of the policy, and requested blanks for the purpose of making proofs as provided in the policy. Appellants having failed to either answer this letter or furnish blanks as requested, Mr. Abney wrote again on July 18, 1933, requesting that they, "Please refer to your files and to my letter addressed to you dated 7th instant, in which I asked for blanks to make proof of accidental death of the assured. I will be glad to give you detailed information as soon as you will furnish me the blanks." Appellants also failed to answer or to furnish the blanks requested, but in lieu began, on their own initiative, an investigation into the facts and circumstances of the injuries to and death of Mr. Marshall. They engaged a representative, Mr. Carter, who visited Sherman, contacted Mr. Abney, attorney for appellee, who accompanied Carter to Whitesboro, and assisted him in procuring the written statements of four persons—two, Logan and Barnes, employees of deceased, regarding the circumstances under which it is claimed the accident occurred, and two, Dr. Price, local physician who treated deceased, and Mr. Summy, undertaker who prepared the body for burial, pertaining to the probable cause of Marshall's death. After obtaining these statements, Carter informed Abney that he (Carter) had all the facts he cared to get, and, after separating from Abney, interviewed Drs. Stout and Enloe (the two physicians whose testimony sup-

ports the contention of appellants that the death of Marshall was caused by gastro-enterocolitis, an infectious disease of the stomach, and by nephritis, an infectious disease of the kidneys). After the events just recited, not hearing from appellants, Abney wrote August 7, 1933, to the effect that he hoped they were in position to give him some information in regard to the claim; in answer to which appellants wrote August 14, 1933, saying: "Dear Sir: In response to your communication of August 7th, we regret to advise that none of the information that we have been able to obtain in connection with this case indicates that Mr. Marshall's death was produced under such circumstances as to create liability under the policy he had with this Company and,. upon such information as the Company has, we would not be justified in acknowledging liability. For that reason, the Company can only furnish you with claim blanks with a full reservation of all its rights in the premises and without, in any manner, waiving its right to deny liability under the policy. . If you desire to have claim blanks furnished you under such circumstances, we will be very glad to forward same upon receipt of communication from you to that effect." In answer, Abney wrote August 24th, as follows: "As I construe your letter you intend to deny liability under the policy. If I have misconstrued it please instruct me, and I shall be glad to meet any reasonable request you may make," to which appellants replied August 25, 1933, as follows: "Dear Sir: We have your letter of August 24th replying to ours of the 14th regarding the above case. You state that as you construe our letter, we intend to deny liability under the policy. We were under the impression that our letter was very clear on this point. If you will again refer to our letter of August 14th, you will find we stated that the information we had so far received did not indicate that Mr. Marshall's death was produced under such circumstances as to create liability under the accident sections of the policy which he carried with our Company and that we would not be justified in acknowledging liability at this time. We did not state that the Company denied liability, but advised you that we would be glad to furnish you with the necessary proof blanks with a full reservation of all of our rights in the premises and without, in any manner, waiving our

rights to deny liability under the policy. We stated that if you desire to have claim blanks furnished under such circumstances, we would be very glad to forward same upon receipt of a communication from you to that effect."

The foregoing is the record in regard to the matter of proofs of loss. It is contended, on the one hand, that proofs were furnished in substantial compliance with the terms of the policy, that appellants waived formal proofs, and were estopped to urge failure of appellee to furnish same as a defense to the action; on the other hand, appellants contend that they neither waived strict compliance with the terms of the policy, nor had they estopped themselves to rely upon the failure of appellee to furnish same as a defense, and that, as the affirmative proofs required by the policy were not furnished the judgment should be reversed and rendered, or at least that the case should be remanded for further proceedings.

We think the facts show a substantial compliance with the terms of the policy. After giving notice of appellee's claim that the death resulted from accidental injuries within the meaning of the policy, her attorney twice requested blanks upon which to make formal proofs; these were ignored; and, in lieu of requiring proofs on their own blanks, appellants undertook an investigation of the matter in their own way, and thereafter their Mr. Carter, with the assistance of Mr. Abney, attorney for appellee, developed the facts evidenced by written statements of witnesses that, in our opinion, answered the purpose of formal proofs. After the investigation, Carter observed that he had obtained all the facts he cared to get, which, together with the information obtained from Drs. Stout and Enloe, resulted in the decision of appellants to reject the claim, which in effect they did in their letter of August 14, 1933, stating: "We regret to advise that none of the information that we have been able to obtain in connection with this case indicates that Mr. Marshall's death was produced under such circumstances as to create liability under the policy he had with this Company and, upon such information as the Company has, we would not be justified in acknowledging liability. * * *"

 A claimant, furnishing proofs of death under a policy, is not required to develop and expose all the facts relating to

his claim; the purpose of requiring notice and proofs of death, as said by the court, in Fidelity & Casualty Ins. Co. v. Mountcastle (Tex.Civ.App.) 200 S.W. 862, 865, "is to convey knowledge, or to bring home to the one affected thereby facts or information that will enable him to guard against fraud, to investigate the facts upon which the claim is based, or to prepare himself to satisfy, meet, or contest said claim." Appellants could have insisted upon formal proofs, and doubtless the same would have been furnished if the blanks requested had been furnished. However, the facts developed by Carter, with the assistance of Abney, were sufficient, we think, to enable appellants to guard against fraud and determine, as they did, their course with reference to the claim. After obtaining the facts in the manner stated, and reaching the decision expressed, no purpose would have been further served by furnishing, in a formal manner, a duplication of proofs, and, in our opinion, a duplication was not required under the circumstances. See citation of authorities, in Francis v. International Travelers' Ass'n (Tex.Civ. App.) 260 S.W. 938, 946, 947.

 The statements of the witnesses Logan, Barnes, Dr. Price, and Summy, obtained by Carter and Abney, were offered in evidence by appellee and admitted over the objection of appellants but consideration of same by the jury was confined to the issue whether or not proper proofs of loss were made. There was no error in admitting the statements for this purpose; however, if error in this respect was committed, the same was harmless, as each of the witnesses testified substantially to the same facts at the trial. So we conclude that, to all intents and purposes, proofs were furnished as required by the terms of the policy; that, in failing to furnish blanks as requested, appellants waived strict compliance, and are now estopped to contend that the policy was not complied with in this respect.

Finding no reversible error, the judgment of the court below is affirmed.

Affirmed.

### On Rehearing.

In the original opinion, we had occasion to refer to the testimony of Dr. Stout, witness for appellant, and quoted him as saying that: "Irritation of the colon could be brought about by trauma-

tism, and if a man falls on a hard substance from a standing position in such a way as to bruise the colon or intestines, it would produce that effect."

In their motion for rehearing, appellants direct our attention to the fact that Dr. Stout said it "could produce that effect," and not that it "would produce that effect," as stated in the opinion. This criticism is well taken. We should have used the word "could" instead of "would," and the opinion will be corrected accordingly.

After due consideration, appellants' motion for rehearing is overruled.

Overruled.