## INTER–OCEAN CASUALTY CO. v. BROCKMAN.

### No. 9969.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1941.

Rehearing Denied Jan. 12, 1942.

Geo. K. Holland, of Dallas, Tex., for appellant.

L. E. Elliott and Pat J. Howe, both of Dallas, Tex., for appellee.

Before HOLMES and McCORD, Circuit Judges, and DAWKINS, District Judge.

McCORD, Circuit Judge.

Bessie Brockman brought suit for accident benefits and statutory penalties against Inter-Ocean Casualty Company on a "Nurses' Special Policy" of insurance which by its terms promised to pay the insured $100 per month on account of any disability "resulting; without contributing cause, from accidental bodily injuries". The case was tried to a jury, and verdict was rendered and judgment entered for Miss Brockman. The Inter-Ocean Casualty Company has appealed.

The record shows that Miss Brockman, a graduate nurse, had worked at St. Paul's Hospital in Dallas, Texas, for eighteen years. Her duties at the hospital consisted of making supplies, helping and assisting in the operating room, administering anaesthetics to patients, and helping lift patients from the operating table to a carriage, and from the carriage to the bed. In the early part of September, 1938, while helping lift a patient from the carriage to a bed, Miss Brockman felt a sharp pain in her back and left leg and experienced difficulty in straightening up. After this occurrence she worked on for a while, but the pain in her back and leg grew more severe, and at night her left leg would jerk to such an extent that she was unable to sleep. Her condition steadily became worse, and her physician, Dr. A. R. Thomasson, put her to bed and attempted to relieve the pain in her back and leg by giving her medicine and various treatments. Her condition did not respond to treatment, and her physician then strapped her body, "hung her up by the arms and put a body cast on, stretched her body out."

There was no improvement in the patient's condition, and Dr. Thomasson called in Dr. Paul Williams, an experienced physician and surgeon who specialized in the treatment of spinal disorders. After a full and careful examination, Dr. Williams determined that Miss Brockman was suffering from an injury to her spine, "a rupture of the lumbo-sacral intervertebral disc, with impingement of the fifth lumbar nerve." Other than as to history of the case, Dr. Williams further testified that he found "the lumbar muscles, that is, the muscles in the lower part of the back were in spasm—involuntary type of spasm, what we sometimes call ham-string muscles, that is the muscle in the back of the thigh, of the left thigh. In addition, there was a mild twist, or what is called a list of the spine, that is a twist to one side, which is the result of a group of muscles going into spasm and pulling the spine off center."

Miss Brockman had no disease or abnormality that contributed to her condition. Dr. Thomasson, who had known her and worked with her at the hospital for fifteen years, testified that he had never heard of her being sick before she received the injury to her back. Both doctors testified that she was suffering from an injury to her back and not from disease; that after much effort to effect a cure without operation it became necessary to resort to surgery; and that since her injury she has continued to suffer pain and has been unable to perform any part of her work. At the time of the trial of this suit she was still wearing a brace.

■ On the record before us it cannot be disputed that the appellee was unable to work and perform her duties after lifting a heavy patient and injuring her back in September, 1938; that the policy sued upon was in full force and effect when the injury occurred; and that the insured complied with the terms of the policy by giving notice of her injury and the statement of her doctors. She requested payment for her injuries, but the company declined to pay and from time to time insisted that she make out statements for sick benefits. She declined to make out statements claiming sick benefits, and her physicians refused to certify that she was sick with disease, the contention at all times being that she was suffering from injury. The notice given by the insured was sufficient to call to the attention of the company the fact that an accidental bodily injury had occurred, but it continued to insist that payment be made for illness and not for accidental bodily injury. For the insured to have continued to furnish notices would, certainly, have been a vain and useless service. American National Ins. Co. v. Callahan, Tex.Civ.App., 51 S.W.2d 1083; International Travelers' Ass'n v. Marshall, Tex.Civ.App., 94 S.W. 2d 558; Francis v. International Travelers' Ass'n, Tex.Civ.App., 260 S.W. 938.

■ There was no error in permitting the introduction of doctor's certificates and letters for the purpose of showing that proof of injury had been given to the company, for the court was careful to instruct the jury that such documents were not to be considered as proof of the statements detailed in them.

■ There is no merit in the contention of the appellant that the court erred in refusing its motions for directed verdict, new trial, and judgment notwithstanding the verdict. The evidence is overwhelming to the effect that the insured received an accidental bodily injury, "traumatic in character", while lifting a patient. Her case falls squarely in line with many cases decided by the courts of last resort of Texas and other jurisdictions. The rupture

of the heart or blood vessels in lifting a bale of cotton has been held to be accidental. Pledger v. Business Men's Ass'n, Tex. Com.App., 228 S.W. 110. A back injury resulting from the lowering of a cube of ice into an ice box has been held to be accidental injury. Standard Accident Ins. Co. v. Cherry, Tex.Civ.App., 36 S.W.2d 807. And rupture of a stomach ulcer while lifting a sack of flour has likewise been held to constitute accidental injury. Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347. Clearly, the insured received an injury compensable under the terms of the policy issued to her by the appellant.

There is no reversible error to be found in the rulings on evidence, and the able charge of the trial court fully and fairly covered every phase of the case and is free from error.

The judgment is affirmed.